IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHRISTINE J. WILLIAMS,

   Plaintiff,

vs.

POARCH BAND OF CREEK INDIANS,

   Defendant.

:  
:  
:  
:  CIVIL ACTION 14-594-CG-M
:  
:  
:  
:  

REPORT AND RECOMMENDATION

   This action is before the Court on Plaintiff's Complaint (Doc. 5), Defendant's Motion to Dismiss and supporting brief (Doc. 10), Plaintiff's Response to said Motion, (Doc. 14), Defendant's Reply Brief and Supplemental Authority (Docs. 15, 20), and Plaintiff's Supplemental Authority.  (Doc. 21).  Upon consideration and for the reasons set forth herein, it is recommended that Defendant's Motion to Dismiss be granted, and Plaintiff's Complaint be dismissed for lack of subject matter jurisdiction.

I. Facts and Proceedings

  Plaintiff Christine Williams is a former employee of the Poarch Band of Creek Indians ("PBCI").  Her Complaint, (Doc. 5),[1] asserts claims of "violations of civil rights

---

[1] When Plaintiff filed her initial Complaint (Doc. 1), she did not sign her pleading; the Court ordered her to

(age discrimination) and year of service disparate treatment." (Doc. 5 at 3).   Prior to filing suit, Plaintiff was the lab manager/chief medical technologist within the PBCI Health Department. (Docs. 1, 11-1 at 1, 2).   The PBCI Health Department is a Tribal Department located on PBCI Reservation Lands, and positions within the Health Department are Tribal government jobs. (Doc. 11-1 at 2).   All employees of the Health Department, including Plaintiff during her employment, are considered PBCI employees. (*Id.*).

Plaintiff is over the age of fifty-five and has been employed with the Health Department for over 21 years. (Doc. 1 at 3).   Plaintiff's employment was terminated on June 17, 2014, which she alleges was on the basis of age discrimination. (Doc. 5).   Plaintiff contends that Health Administrator Ginger Bergeron and Tribal Administrator Edie Jackson conspired to replace Plaintiff with a twenty-eight year old female medical laboratory scientist, whom Plaintiff contends is under-qualified for the lab manager position. (*Id.* at 3).   Plaintiff also contends that during the termination process, that Ginger Bergeron, Edie Jackson and Susan Spurill stated to her, "if I did not resign that

_____

sign and refile, which she did on January 6, 2015. (Doc. 4).

the plaintiff would not be able to find a job as a lab manager due to plaintiff's age." (*Id.*). This statement is the basis for Plaintiff's allegation that Bergeron, Jackson and Spurill conspired against her due to her age.[2]

In response to Plaintiff's Complaint, Defendant filed its Motion to Dismiss and supporting brief raising the issue of subject matter jurisdiction due to the fact that PBCI is a federally recognized Indian tribe with a governmental structure independent from the United States government and which operates under the PBCI Tribal Constitution and the Tribal Code of PBCI, both of which explicitly preserve PBCI's right to tribal sovereign immunity. (Docs. 10, 11 at 2). Consequently, Defendant contends that absent congressional authorization or waiver, PBCI is entitled to tribal sovereign immunity. Defendant relies on multiple cases which cite to the conclusion that Indian tribes are domestic dependent nations that exercise inherent sovereign authority, and, absent congressional authorization or waiver, the doctrine of tribal immunity is

---

[2] The Court notes that there are more facts in the record regarding the post-termination events; however, those facts speak to the merits of Plaintiff's case, which are not at issue in the pending Motion to Dismiss. (Doc. 10). Defendant has raised subject matter jurisdiction as its basis for dismissal, so the Court will not engage in any merit-based fact analysis until the Motion to Dismiss is fully resolved.

well settled, and suits against a tribe are due to be dismissed due to lack of subject matter jurisdiction. (Doc. 11 at 5).

Defendant further contends that because the Age Discrimination Employment Act ("ADEA") does not abrogate the doctrine of tribal sovereign immunity, PBCI maintains its immunity rendering this Court powerless to hear Plaintiff's Complaint. (*Id.* at 7). Additionally, Defendant contends that not only is congressional authorization or waiver lacking, but the ADEA is silent with respect to allegations addressing congressional authorization of private lawsuits under the ADEA, which silence must be construed in PBCI's favor. (*Id.*). Defendant cites to multiple courts, including courts in this Circuit, which have dismissed similar claims due to such tribal sovereign immunity. (*Id.* at 8). Defendant contends that the proper forum for Plaintiff's allegations, if anywhere, is before the Tribal Employment Rights Office. (*Id.* at 14). The Tribal Employment Rights Code provides PBCI employees with an administrative procedure and remedy to challenge employment practices, and the right to an appeal. (*Id.* at 14, 15).

Plaintiff filed a "Brief For Motion to Proceed," which the Court treats as a Response to Defendant's Motion.

4

(Doc. 14).  Plaintiff begins her rebuttal by characterizing Defendant's jurisdiction issues as a request for abstention, and states that such request should be denied because "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them. . . [and] it is not for the courts to withdraw that jurisdiction which Congress expressly granted under section 1983 where such a withdrawal is contrary to the purpose of Congress in extending [an] alternative forum." (*Id.* at 6-7).  The Court notes that Defendant did not raise an abstention issue, but rather lack of jurisdiction, and thus, abstention will not be addressed herein.

Next, Plaintiff's response states that because the "United States Supreme Court [has] determined that a state court has no jurisdiction over a claim against an Indian tribe when the claim arises on Indian land," and because this is a federal case, that Plaintiff has the right to sue in federal court.  (Doc. 14 at 7).  Plaintiff further contends that because the lab was inspected every two years by a federal government compliance program under the Clinical Laboratory Improvement Amendments of 1988 ("CLIA"), and because the "inspections were performed by the federal government[, then] the federal government has jurisdiction over the [PBCI] lab. . . If the federal

government had jurisdiction during these inspections, they also should have jurisdiction over this age discrimination case." (*Id.* at 7-8).

Lastly, Plaintiff contends that "silence is golden" and where a conflict of law exists, a case-by-case analysis is required. (*Id.* at 8). Plaintiff provides no case law for this contention, but nonetheless concludes that because "Congress did not lean to the right or left on tribal sovereign immunity[, so] the federal courts have the right to final jurisdiction." (*Id.*). Plaintiff also makes the unsupported conclusion that this Court has jurisdiction because the "ADEA does authorize private lawsuits against federally recognized Indian tribes due to silence." (*Id.*).

Defendant responds pointing out that any abstention arguments by Plaintiff are without merit; the Court agrees. (Doc. 15 at 2). Defendant addresses the "silence is golden" argument by stating that silence operates as evidence that Congressional abrogation or waiver of PBCI's tribal sovereign immunity does not exist, and therefore, PBCI is immune from an ADEA suit, and this Court lacks subject matter jurisdiction over such. (*Id.*). Defendant notes that Plaintiff has provided no evidence of express and unequivocal abrogation of tribal sovereign immunity in relation to her ADEA claim. Defendant also notes that

6

Plaintiff *admits* Congress is silent on the abrogation issue, and relies on cases from this Circuit and others which rule that silence does not equal abrogation.  (*Id.* at 3-4).

Finally, Defendant proposes that Plaintiff's claim is proper, if anywhere, before the Tribal Employment Rights Office ("TERO").  (*Id.* at 6).  That proposition is based on the Tribal Employee Rights Code stating that "any Tribal Employee . . . who believes that an Employer . . . has violated rights protected by this Title may file a written complaint with [TERO]."  (*Id.*).  Defendant relies on the assertions of affiant Edie Jackson attesting to the fact that Plaintiff is a tribal employee and the PBCI Health Department is a Tribal Government Department, which Plaintiff does not dispute.  (*Id.* at 6-7).

Subsequent to filing its Reply, Defendant PBCI requested leave to file supplemental authority, which was rendered by the Second Circuit shortly after the close of briefing and which is strikingly analogous to the set of facts at hand.  (Doc. 18).  The Court granted Defendant's request and Defendant filed its supplement.  (Doc. 20). The Second Circuit affirmed the district court's dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure of a *pro se* plaintiff's discriminatory charge

brought under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act against the Mohegan Sun Casino, a gaming center owned and operated by the Mohegan Indian Tribe. (Doc 18 at 2). In affirming the lower court's decision, the Second Circuit held tribunal sovereign immunity barred the plaintiff's ADEA claim. *Tremblay v. Mohegan Sun Casino,* 599 Fed. Appx. 25 (2d Cir. 2010).

Plaintiff then filed her own Motion to Submit Supplemental Authority, which was also granted. (Doc. 21, docket entry 22). Plaintiff relies on a case out of the Eastern District of Wisconsin wherein the Equal Employment Opportunity Commission filed an action to enforce a subpoena it served pursuant to the ADEA on the Forest County Potawatomi Community ("the tribe") in its capacity as proprietor of Potawatomi Bingo Casino. *EEOC v. Forest County Potawatomi Cmty,* 2014 WL 1795137 (E.D. Wis. May 6, 2014). The Court in *Potawatomi* found that the ADEA did apply to the Tribe because the facts therein did not touch on the Tribe's right to self-governance in purely intramural matters; however, that Court also noted that at least three other circuits found that the ADEA did not apply to tribes due to unabridged sovereign tribal immunity. *Potawatomi,* 2014 WL 1795137, at *3. This Court

8

points out that the set of facts in *Potawatomi* are not analogous to Plaintiff's set of facts.

Plaintiff relies on another case, *White v. Poarch Band of Creek Indians,* No. SC-12-01 (Appeal from Poarch Band Indians Tribal Court Civil Action No. CV-09-73), which speaks to the merits of Plaintiff's allegations, and not the jurisdictional issues raised by Defendant in its Motion to Dismiss.  Because the merits of Plaintiff's claim are not at issue, the Court will not consider said case.  After careful consideration, the Court concludes that Plaintiff's Complaint is due to be dismissed for lack of subject matter jurisdiction for the following reasons.

## II.  Discussion

### a. Motion to Dismiss Standard

Defendant PBCI moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  The Court will address the law on each ground for dismissal in turn.

"Subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."  *United States v. Cotton,* 535 U.S. 625, 630 (2002).  "Moreover, courts, including this Court, have an independent obligation to determine whether subject matter

jurisdiction exists, in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006)(*citing Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999)).  Thus, when a court determines it lacks subject matter jurisdiction, the court "must dismiss the complaint in its entirety."  *Arbaugh* at 514.

A challenge to subject matter jurisdiction under Rule 12(b)(1) may come in two forms, "facial" or "factual." *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A facial attack challenges subject matter jurisdiction based on the allegations contained in the complaint.  *Id.* at 1529.  A factual attack, however, challenges subject matter jurisdiction in fact, irrespective of the pleadings, and a court may consider extrinsic evidence.  *Id.*

Under Rule 12(b)(6), a defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).  Factual allegations, on the assumption that all allegations in the complaint are true, must be enough to raise a right to relief above the speculative level and state a claim for relief that is plausible on its face. *Id.* at 555, 570.

The Court accepts all facts as true and limits its consideration to the pleadings and exhibits attached thereto.  *Abraham v. Greater Birmingham Humane Soc'y, Inc.,* No. 2:11-CV-4358-SLB, 2014 WL 1043230, *1 (N.D.Ala. Mar. 17, 2014)(*citing Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000)(citation omitted). Without converting it to a motion for summary judgment, the Court may consider facts outside the pleadings in resolving a motion to dismiss where the parties were given sufficient opportunity to develop the record and the authenticity of the documents considered is undisputed.  *Rogers v. Shinseki,* No. CV 112-194, 2014 WL 1093147, at *4 (S.D.Ga. Mar. 18, 2014)(*citing Tillery v. U.S. Dep't of Homeland Sec.,* 402 F. App'x 421, 424 (11th Cir. 2010)(citation omitted); *see also Judkins v. Saint Joseph's Coll. of Me.,* 483 F.Supp.2d 60, 62 (D.Me. Apr. 20, 2007)(determining the EEOC charge and other EEOC documents could be considered on

a motion to dismiss).  All reasonable inferences are drawn
in favor of the plaintiff; however, unsupported conclusions
of law or of mixed fact and law have long been recognized
not to prevent a Rule 12(b)(6) dismissal.  *Abraham,* 2014 WL
1043230 at *1 (*citing Dalrymple v. Reno,* 334 F.3d 991, 996
(11th Cir. 2003)(citation omitted).

b. Sovereign Immunity

It is undisputed, and the Court takes judicial notice
that PBCI is a federally recognized Indian tribe, which, by
virtue of its status, enjoys tribal sovereign immunity. *See
e.g., Bodi v. Shingle Springs Band of Miwok Indians,* 19 F.
Supp. 3d 978, 982 (E.D.Cal. 2014)("As the Federal Register
is a source 'whose accuracy cannot reasonably be
questioned,' the court will take judicial notice that the
Tribe is recognized as a tribal entity by the United States
government."); *Solutia, Inc. v. McWane, Inc.,* 2012 WL
2031350, at *9 n. 9 (N.D.Ala. June 1, 2012)("the court is
authorized to take judicial notice of the contents of the
Federal Register")(*citing* 44 U.S.C. § 1507)(citation
omitted)).  *See also* Defendant's Briefs Docs. 10, 11, 11-1,
and 15; *Allman v. Creek Casino Wetumpka,* 2011 WL 2313706,
at *1 (M.D.Ala. May 23, 2011)(citing 25 U.S.C. § 479a-1; 75
75 Fed. Reg. 60810 (Oct. 1, 2010); 74 Fed. Reg. 40218-02
(Aug. 11, 2009).  Due to this immunity status, the United

States Supreme Court reaffirmed that "Indian tribes are domestic dependent nations that exercise inherent sovereign authority," and time and again, the doctrine of tribal immunity has been treated as settled law as the basis of dismissal of any suit against a tribe absent congressional authorization or waiver. *Michigan v. Bay Mills Indian Cmty.,* 134 S.Ct. 2024 (2014). Therefore, the Court concludes that the doctrine of sovereign immunity is applicable herein, and will turn its analysis to whether PBCI has waived its immunity status and whether Congress has expressly abrogated such immunity as may be applied under the ADEA.

1. Waiver of Immunity

A waiver of sovereign immunity "cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed." *Sanderlin v. Seminole Tribe of Fla.,* 243 F.3d 1282, 1286 (11th Cir. 2001). "Although the Supreme Court has expressed some skepticism regarding the current expansive[ness ] of tribal sovereign immunity, it has declined to rewrite its existing case law and has instead deferred to Congress to alter or narrow the bounds of that immunity." *See Kiowa Tribe of Okla. V. Mfg. Techs., Inc.,* 523 U.S. 751, 758, (1998) (noting that "in our interdependent and mobile society, ... tribal immunity

extends beyond what is needed to safeguard tribal self-governance," but declining to revisit the broad grant of immunity afforded by prior decisions).  Plaintiff has not provided any evidence at all showing that PBCI expressly and unmistakably waived its right to sovereign immunity from suit.

On the contrary, Defendant has provided ample evidence that PBCI invokes and preserves its right to tribal sovereign immunity without waiver.  *See* Doc. 11 at 10 (citing PBCI Tribal Code § 1-1-1 stating in pertinent part, "This sovereign immunity of the [PBCI] is not waived by any section, part, word, or phrase contained in this Tribal Code or amendments thereto").  Furthermore, Defendant cites to the Tribal Employment Rights Code, which states in pertinent part, "Nothing contained in this Title shall be construed as a waiver by the [PBCI] of sovereign immunity from uncontested lawsuits or as consent by the [PBCI] to the bringing of any action against the [PBCI], its officers, agents, employees, departments or business entities or enterprises."  *Id.* at 11 (*citing* PBCI Tribal Code § 33-8-9).  Therefore, without any evidence indicating otherwise, the Court concludes that PBCI has not waived its tribal sovereign immunity, and is immune from the allegations stated in Plaintiff's Complaint.

2. Congressional Abrogation

Turning now to the issue of abrogation, Plaintiff asserts that, according to *Williams v. Lee,* 358 U.S. 217 (1958), only state courts lack jurisdiction over claims arising on Indian land, (Doc. 14 at 7); and that because the lab she worked in was inspected by the "federal government" then the federal government has jurisdiction over her ADEA claim.  Plaintiff hangs her hat on the phrase that "silence is golden" because Congressional silence means that "Congress did not lean to right or left on tribal sovereign immunity," and thus, the "ADEA does authorize private suits against federally recognized Indian tribes due to silence," giving the federal courts "the right to final jurisdiction."  (Doc. 14 at 8).

Defendant contends PBCI is immune from Plaintiff's suit because Congress failed to abrogate tribal sovereign immunity in the text of the ADEA, and the statute is also silent with respect to any allegations addressing Congressional authorization of private lawsuits under the ADEA.  (Doc. 11 at 7). The Court agrees with Defendant that Congress has not abrogated the doctrine and the ADEA's silence regarding such does not equal authorization.

In order for Congress to abrogate tribal sovereign immunity, it must "unequivocally express that purpose."

*Bay Mills,* 134 S.Ct. 2024, 2031; *Fla. Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla.,* 166 F.3d 1126, 1131 (11th Cir. 1999)(concluding that Congress abrogates tribal immunity only where the definitive language of the statute itself states an intent to either abolish Indian tribes' common law immunity or to subject tribes to suit under the act").

As the Supreme Court stated in *Kiowa,* 523 U.S. 751, 759, "Congress has occasionally authorized limited classes of suits against Indian tribes and has always been at liberty to dispense with such tribal immunity or to limit it." In reviewing the relevant portions of the ADEA, the Court could not discern any implied, let alone unequivocally expressed, abrogation of tribal sovereign immunity. *See* 29 U.S.C. §§ 621-634. Furthermore, because the ADEA does not expressly address Indian tribes in its text, the Court looked to the legislative history of the statute, which also contains no reference regarding its applicability to Indian tribes. *E.E.O.C. v. Fond du Lac Heavy Equip. and Const. Co., Inc.,* 986 F.2d 246, 250 (8th Cir. 1993). Accordingly, neither the statute nor the statute's legislative history indicates a clear and plain congressional intent to apply the ADEA to Indian tribes. Therefore, this Court lacks subject matter jurisdiction

over Plaintiff's Complaint due to Defendant's tribal sovereign immunity.

In addition to the lack of congressional abrogation, numerous courts across the nation have also dismissed ADEA claims due to tribal sovereign immunity. *See Garcia v. Akwasasne Hous. Auth.,* 268 F.3d 76, 86 (2d Cir. 2001)(affirming dismissal of plaintiff's ADEA claim against agency of Indian tribe); *Fon du Lac Heavy Equip. & Constr. Co.,* 986 F.2d at 250 (holding that tribe member did not have a viable ADEA claim against tribe employer because the ADEA did not show Congress' "clear and unmistakable intent" to abrogate the tribe's sovereign immunity from suit); *E.E.O.C. v. Cherokee Nation,* 871 F.2d 937, 939 (10th Cir. 1989)("where ambiguity exists (such as that posed by the ADEA's silence with respect to Indians), and there is no clear indication of congressional intent to abrogate Indian sovereign rights (as manifested, *e.g.,* by the legislative history, or the existence of a comprehensive statutory plan)," such ambiguity is resolved in favor of Indian interests).

Moreover, the Eleventh Circuit has previously upheld tribal sovereign immunity in cases involving employment related statuses. *See Taylor v. Ala. Intertribal Council,* 261 F.3d 1032, 1036 (11th Cir. 2001)(citing to and relying

17

on other cases wherein tribal sovereign immunity was applied as a bar to private suit for discrimination allegations under the ADEA). Based on the forgoing, it is clear that this Court does not have subject matter jurisdiction over Plaintiff's claim due to the well-settled doctrine of tribal sovereign immunity.

### III. Conclusion

After careful consideration of the pleadings and record, and for the reasons set out above, the Court concludes that Defendant's Motion to Dismiss for lack of subject matter jurisdiction is due to be granted and Plaintiff's Complaint dismissed.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to

challenge on appeal the district court's order based on
unobjected-to factual and legal conclusions if the party
was informed of the time period for objecting and the
consequences on appeal for failing to object. In the
absence of a proper objection, however, the court may
review on appeal for plain error if necessary in the
interests of justice."  11th Cir. R. 3-1.  In order to be
specific, an objection must identify the specific finding
or recommendation to which objection is made, state the
basis for the objection, and specify the place in the
Magistrate Judge's report and recommendation where the
disputed determination is found. An objection that merely
incorporates by reference or refers to the briefing before
the Magistrate Judge is not specific.

DONE this 10th day of June, 2015.

s/ BERT W. MILLING, JR
UNITED STATES MAGISTRATE JUDGE